IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) CIVIL ACTION NO. |
| Plaintiff, | ) ) ) |
| v. | ) ) C O M P L A I N T ) ) |
| HOEGANAES CORP. | ) JURY TRIAL DEMAND |
| Defendant. | ) ) |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*, as amended by the Americans with Disabilities Act Amendments Act of 2008, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Edward Love who was adversely affected by such practices. As alleged with greater particularity in paragraphs 10 through 11 below, the Commission alleges that Defendant regarded Mr. Love as a disabled individual and failed to hire him on that basis.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This is an action authorized and instituted pursuant to § 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the

Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Tennessee, Nashville Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission ("Commission"), is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA, and is expressly authorized to bring this action by §107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference §§ 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant Hoeganaes Corporation ("Defendant"), a producer of atomized steel and iron products, was doing business in the State of Tennessee and the City of Gallatin, and has continuously had at least fifteen employees.

5. At all relevant times, Defendant has continuously been and is now an employer engaged in an industry affecting commerce under § 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference §§ 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

7. More than 30 days prior to the institution of this lawsuit, Mr. Love filed a Charge of Discrimination with the Commission alleging violations of Title I of the ADA by

Defendant.

8. The Commission found reasonable cause to believe the charge was true, and endeavored to eliminate the discriminatory practice(s) through informal methods of conference, conciliation, and persuasion, but was unable to secure a conciliation agreement acceptable to the Commission.

9. All conditions precedent to the initiation of this lawsuit have been fulfilled.

10. Since at least March 2011, Defendant engaged in an unlawful employment practice at its Gallatin, Tennessee facility in violation of § 102(a) of Title I of the ADA, 42 U.S.C. §§ 12112(a).

11. The unlawful employment practice includes failing to hire Mr. Love because Defendant perceived or regarded him as having a disability based upon his hypertension and anxiety.

   a. Defendant produces atomized steel, iron powders, and powdered ferris metals for use in metallurgical application.

   b. Mr. Love applied to work for Defendant as a Maintenance Mechanic.

   c. Around February 2011, Defendant interviewed Mr. Love for employment.

   d. On March 9, 2011, Defendant extended Mr. Love a formal job offer in writing.

   e. Defendant scheduled Mr. Love to complete a physical examination and drug screening on March 10, 2011.

   f. Gallatin Urgent Care ("GUC") is Defendant's medical provider.

   g. Upon Mr. Love's arrival at GUC, he was instructed to fill out Defendant's medical questionnaire and related forms.

h. Mr. Love revealed that he had recently taken prescription drugs, some of which were prescribed for anxiety.

i. When GUC reviewed the forms, and otherwise learned of Mr. Love's prescription medications, including those for anxiety, GUC notified Defendant.

j. In response, Defendant faxed a job description, skills matrix, and job specification to GUC and instructed GUC to send Mr. Love to his Primary Care Physician ("PCP") so he could obtain clearance from his PCP that he was capable of performing the essential functions of the Maintenance Mechanic job.

k. Mr. Love left GUC and immediately drove across town to see his PCP, Dr. Stephen Bennett.

l. Dr. Bennett provided Mr. Love with a note which read: "Patient can have a physical exam."

m. Mr. Love returned to GUC to proceed with his physical examination, but GUC did not accept Dr. Bennett's note.

n. GUC told Mr. Love he needed to obtain a second note from Dr. Bennett explaining why he was taking certain prescription medications.

o. While waiting for Dr. Bennett to fax a second note to GUC, a GUC nurse placed Mr. Love in an examination room where she took his blood pressure.

p. The GUC nurse told Mr. Love his blood pressure was too high and she could not move forward with the physical examination.

q. Shortly thereafter, Dr. Bennett's second note arrived by fax explaining Mr. Love's prescription medications, but GUC still refused to administer the physical examination.

r. The GUC nurse instructed Mr. Love to resume his blood pressure medication in order to lower his blood pressure, and subsequently he could return for his physical examination on a later date.

s. Mr. Love contacted Defendant to express disappointment with what had occurred at GUC.

t. Defendant told Mr. Love to get his blood pressure down and Defendant would hold the job for him.

u. Mr. Love set an appointment with Dr. Bennett for March 28, 2011.

v. During the appointment, Dr. Bennett indicated that Mr. Love's blood pressure was controlled.

w. After examination, Dr. Bennett provided Mr. Love with a third note stating that Mr. Love "should be able to perform his job duties at Hoeganaes without restrictions, meds he takes are ok."

x. Mr. Love delivered the note to GUC on the same day, hoping to move forward with the physical examination.

y. About 30 minutes after Mr. Love dropped off the note at GUC, he received a phone call from Ms. Joyce Birdwell, Defendant's Human Resources Manager.

z. Ms. Birdwell explained that the word "should" in Dr. Bennett's note was not adequate; therefore Mr. Love was not sufficiently cleared for the job.

aa. Ms. Birdwell asked had Mr. Love gotten his blood pressure down.

bb. Ms. Birdwell also told Mr. Love that he did not follow instructions well because he was supposed to bring Dr. Bennett's note directly to her instead of taking it to GUC.

cc. Defendant rescinded Mr. Love's job offer.

dd. GUC never administered a physical examination to Mr. Love.

ee. Defendant, through GUC, failed to determine whether Mr. Love was capable of performing the essential functions of the Maintenance Mechanic position.

ff. Thereafter, Defendant hired someone else to fill this position offered to Mr. Love.

gg. Defendant rejected Mr. Love based on myths, fears, and stereotypes associated with his perceived disability.

12. The effect of the practices complained of in paragraph 11, including subsections a through gg above, has been to deprive Mr. Love of equal employment opportunities and otherwise adversely affect his status as a prospective employee, because Defendant regarded him as a disabled individual based upon his hypertension and anxiety.

13. The unlawful employment practices complained of in paragraphs 10 through 11 above were intentional.

14. The unlawful employment practices complained of in paragraphs 10 through 11 above were done with malice or with reckless indifference to the federally protected rights of Mr. Love.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from failing or refusing to hire an employee because of a perceived disability.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Mr. Love, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices including, but not limited to, hiring Mr. Love, or alternatively awarding him front pay; reimbursing his out of pocket medical expenses; and supplementing his lost 401(k) contributions.

D. Order Defendant to make whole Mr. Love by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 10 through 11 above, including living and travel expenses, and cost of replacement medical insurance, in amounts to be determined at trial.

E. Order Defendant to make whole Mr. Love by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraphs 10 through 11 above, including emotional pain and suffering,

humiliation, inconvenience, and loss of enjoyment of life, in amounts to be determined at trial.

    F.    Order Defendant Employers to pay Mr. Love punitive damages for its malicious and reckless conduct, as described in paragraphs 10 through 11 above, in an amount to be determined at trial.

    G.    Grant such further relief as the Court deems necessary and proper in the public interest.

    H.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully Submitted,

**P. DAVID LOPEZ**
General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel

*Faye A. Williams by ACJ*
**FAYE A. WILLIAMS**
Regional Attorney
Tennessee Bar No. 011730

*Joseph M. Crout by ACJ*
**JOSEPH M. CROUT**
Supervisory Trial Attorney
Tennessee Bar No. 012857

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Memphis District Office
1407 Union Avenue, Suite 901
Memphis, TN 38104
(901) 544-0136

*Anica C. Jones*
**ANICA C. JONES**
Trial Attorney
Tennessee Bar No. 025325

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Nashville Area Office
220 Athens Way, Suite 350
Nashville, TN 37228
(615) 736-2105